UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

FAY RAMOS,

                    Plaintiff,

          v.

CHOOK ON PEARL, LLC d/b/a CHOOK CHICKEN

                    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Fay Ramos, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint and Jury Demand against Chook on Pearl, LLC d/b/a Chook Chicken ( "Chook" or "Defendant"), states and alleges as follows:

## PRELIMINARY STATEMENT

1.      Ms. Ramos worked for Chook, a restaurant chain, as a Food Expediter from February 2022 through October 2022. Throughout her employment, she was discriminated against based upon her race and sex/gender (Hispanic/Latina, female). Her supervisor, Brandon Maynard (Caucasian, male) would frequently make comments like: "All of you Latinas are the same, you are all crazy!" When Ms. Ramos refused Mr. Maynard's flirtation and advances, he retaliated against her by yelling at and demeaning her, instructing her to leave work early, and reducing her weekly shifts.

2.      On or about June 24, 2022, Ms. Ramos reported the unlawful harassment and discrimination to Chook. In part, she explained: "I feel like I have to walk on eggshells because

Brandon's going to send me home whenever he wants for absolutely no valid reason besides the

fact that I don't take his sexual advances and that's what he doesn't want to admit."  After she

reported his unlawful conduct to Chook's Human Resources, Mr. Maynard's conduct worsened,

and he further reduced Ms. Ramos's shifts.  Ultimately, Ms. Ramos was forced to resign.

## **PARTIES**

3.     Ms. Ramos is, and at all times relevant to the Complaint was, a resident of

Colorado.

4.     Chook on Pearl, LLC d/b/a Chook Chicken ("Defendant" or "Chook") is a

Colorado limited liability company with a principal place of business at 4340 E. 8th Avenue,

Denver, CO 80220.

5.     According to Chook's LinkedIn page, Chook has four locations: (1) Chook on

Pearl, located at 1300 S. Pearl Street, Denver, CO 80210; (2) Chook at Stanley Marketplace,

located at 2501 N. Dallas Street, Suite 106, Aurora, CO 80010; (3) Chook on Birch, located at

4340 E. 8th Ave., Denver, CO 80220; and (4) Chook on Orchard, located at 2300 E. Orchard Rd.

#C, Greenwood Village, CO 80121.

6.     According to Chook's LinkedIn page, Chook has 51-200 employees spread

between their four locations and/or parent companies.

7.     Chook claims that it is an environmentally and socially responsible rotisserie

chicken restaurant committed to wholesome ingredients, local sourcing whenever possible, and

sustainable farming and agricultural practices.

8.     Chook claims that it donates one percent of all sales back to the local community.

9.      Chook claims that it has a zero-tolerance policy for any form of discrimination, harassment, and retaliation and has implemented written policies prohibiting such conduct and encouraging employees to promptly report any such behavior.

10.      Ms. Ramos worked at Chook's principal place of business, at 4340 E. 8th Avenue, Denver, CO 80220.

11.      Chook was Ms. Ramos's employer at all times relevant.

## JURISDICTION AND VENUE

12.      Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

13.      This Court has original jurisdiction over Ms. Ramos's federal claims pursuant to 28 U.S.C. § 1331.

14.      This Court has supplemental jurisdiction over Ms. Ramos's state tort law claim pursuant to 28 U.S.C. § 1367.

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

16.      Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

17.      Ms. Ramos filed Charges of Discrimination, Numbers E2300017443 and E2300017444, with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission against Chook for discrimination based on race and sex/gender, constituting a hostile work environment, failure to promote, and retaliation on or about October 3, 2022.

18.     Ms. Ramos was issued a Notice of Right to Sue from the EEOC with Respect to her Charges on or about May 1, 2023.  Ms. Ramos files the present action within ninety (90) days of receipt of the Notice of Right to Sue.

19.     Ms. Ramos filed additional Charges of Discrimination against Chook (and a related and/or parent company) on or about July 17, 2023.  At the time of this filing, Ms. Ramos has not yet received a Right to Sue from the CCRD and/or EEOC related to these Charges.  Once the Right to Sue notices are issued in those matters, Ms. Ramos anticipates amending her Complaint to include additional claims and/or allegations.

20.     Jurisdiction and venue will remain proper with this Court upon amendment of the Complaint.

21.     Ms. Ramos has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

22.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

23.     Ms. Ramos began working for Chook as an Expediter (a.k.a. "Expo") on or about February 10, 2022.

24.     In this role, Ms. Ramos boxed takeaway orders, delivered food to guests in the dining room, and assisted with other related duties such as clearing food and drinks and cleaning dining areas, restrooms, and kids' areas.

25.     Shortly after she began working for Chook, Ms. Ramos noticed one of the shift supervisors, Brandon Maynard (Caucasian), arguing with his ex-girlfriend.  After the argument,

Mr. Maynard said to Ms. Ramos (Hispanic/Latina): "All of you Latinas are the same, you are all crazy!"

26.    Soon after this interaction, Mr. Maynard made sexually suggestive comments to Ms. Ramos, including but not limited to: "My family is racist, and I actively love going against it by dating Latina women."

27.    Throughout her employment, Mr. Maynard made unwelcome sexual advances and derogatory comments related to race to Ms. Ramos.

28.    When Ms. Ramos turned down Mr. Maynard's sexual advances and refused to engage in flirting with him, Mr. Maynard became hypercritical of her work, and made false and unsubstantiated notes, accusing Ms. Ramos of mistakes and errors that she did not make.

29.    Mr. Maynard began to shout at Ms. Ramos, using profanity to demean and humiliate her in front of coworkers and customers.

30.    Upon information and belief, Mr. Maynard did not treat individuals who were outside of Ms. Ramos's protected class this way – i.e. he did not yell at and demean men and Caucasian employees the way he did with Ms. Ramos.

31.    When Ms. Ramos confronted Mr. Maynard about the unprofessional and hostile nature of his behavior, Mr. Maynard replied: "I'm the boss so deal with it."

32.    Whenever Ms. Ramos asked Mr. Maynard not to berate her and treat her differently than other individuals outside of her protected classes, he responded by retaliating against her: he would tell her to clock out and leave work, frequently ending her shifts early and thus reducing her pay.

33.    Upon information and belief, Mr. Maynard also intentionally sent Ms. Ramos home early on multiple occasions as an excuse to avoid paying her earned tips.

34.    For example, on or about June 18, 2022, Chook asserts it cut Ms. Ramos early – in part – because it intended to deny her earned shared tips.  Mr. Maynard states: "So i [sp] cut Fay at 8 because I didn't think it fair to give her another free hour of pay and shared tips with a staff that was diligently working."  [Chook's Position Statement, Exhibit E].

35.    Each time Ms. Ramos reported discriminatory and unlawful conduct, Mr. Maynard retaliated against her by reducing her hours and thus, reducing her income.

36.    On or about June 24, 2022, Ms. Ramos wrote an email to Abby Sands (Human Resources Director) reporting Mr. Maynard's unlawful behavior.

37.    Among other items, Ms. Ramos noted to Ms. Sands: "I am being mistreated because I did not accept any of Brandon's sexual advances."

38.    The following are a few but not a complete list of examples of the examples Ms. Ramos reported about Mr. Maynard to Ms. Sands:

    a.    Mr. Maynard commented to Ms. Ramos that he has "only dated Latinas."

    b.    When Ms. Ramos did not engage with him in sexual innuendo – for example when they would bump into one another or brush up against one another – then he would be rude, condescending, and sarcastic to Ms. Ramos, or would get upset with her and send her home from work early.

    c.    In one example of Mr. Maynard attempting to make advances towards Ms. Ramos, when Ms. Ramos said she was hurt over a breakup, Mr. Maynard responded: "That's what happens when girls go for the bad boy instead of good guys like us."

d.  Mr. Maynard later admitted that he had told Ms. Ramos that she "should date nicer men like himself."  [Position Statement, Exhibit J, Mediation Notes].

e.  In another example, Mr. Maynard was very obviously staring at a female customer, checking her out.  When Mr. Maynard saw I had noticed him staring and looked at me, I smiled.  He responded: "What Fay?  Are you jealous?  Learn to step up your game!"

39.    After Ms. Ramos reported Mr. Maynard's inappropriate and unlawful conduct to Ms. Sands, Mr. Maynard became more hostile towards Ms. Ramos.

40.    For example, on or about June 25, 2022, Mr. Maynard yelled at Ms. so loudly that customers seemed to notice.  When Ms. Ramos asked Mr. Maynard to stop yelling in her face, he told her to leave.

41.    On or about June 25, 2022, in retaliation for her protected conduct of reporting, Mr. Maynard issued Ms. Ramos a write-up for purportedly creating a negative environment.

42.    On or about June 26, 2022, Ms. Ramos met with Ms. Sands, Mr. Maynard, and another supervisor, Kiley Fraley (General Manager) to discuss her protected reports about Mr. Maynard's inappropriate and unlawful behavior.  Instead of heeding or agreeing to investigate her concerns, during this conversation, Ms. Sands asked that Ms. Ramos and Mr. Maynard "put the past behind them," "move forward," and "get back on the same page."

43.    Upon information and belief, Ms. Sands did not initiate any investigation into Ms. Ramos's reports about the hostile work environment.

44.    Since she reported to Human Resources, Chook continued to cut Ms. Ramos's shifts.

    a.   For example, Ms. Ramos was initially scheduled for 3-4 days per week.

    b.   Following her reports of sexual harassment and discrimination, Chook reduced her shifts to only one day per week.

    c.   When Ms. Ramos requested more work, her requests were refused.  For example, on or about August 5, 2022, Ms. Ramos messaged Ms. Fraley requesting additional shifts.  Ms. Fraley said no, but also explained that Chook was hiring another employee.

    d.   Further, despite hiring another employee, Ms. Fraley informed Ms. Ramos that Chook was further reducing Ms. Ramos's shifts.

45.    In or about May 2022, Ms. Fraley promised that Ms. Ramos would soon be promoted to Front of House Manager (i.e. Floor Manager).  In or about June 2022, Ms. Ramos learned that Ms. Fraley had decided to instead give Orshki (aka "Bear") the promotion.

46.    Ultimately, because of the ongoing unlawful treatment constituting a hostile work environment, Defendant's failure to take action, and her significantly reduced shifts, Ms. Ramos was forced to resign.

## FIRSTCLAIM FOR RELIEF
### (Discrimination and Hostile Work Environment Based on Race and/or National Origin in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"))

47.    Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

48.    Section 1981 prohibits discrimination in the making and enforcement of contracts and is designed to include a remedy against discrimination in employment on the basis of race, ancestry, ethnicity, ethnic traits, and/or national origin.

49.     Under Section 1981, all persons have the same right to make and enforce contracts and to enjoy full and equal benefit of all laws.

50.     Employment contracts are among those contracts protected by Section 1981.

51.     Chook entered into contracts with Ms. Ramos that are subject to Section 1981.

52.     Ms. Ramos is a member of a protected class because she is Hispanic and identifies as Hispanic and/or Latina.

53.     Ms. Ramos was treated differently by Chook than similarly-situated employees who did not have her race and/or national origin.

54.     Ms. Ramos was denied full and equal benefit of all laws based on her race and/or national origin unlike similarly situated employees who did not have her race and/or national origin.

55.     Based on the above-described acts, practices, and omissions, Chook engaged in unlawful discrimination under Section 1981 based on Ms. Ramos's race and/or national origin.

56.     Chook's harassment of Ms. Ramos was aimed at her because of her race and/or national origin, resulting in adverse impacts to the terms and conditions of her employment and further subjecting Ms. Ramos to harassment and a hostile work environment.

57.     At the time the above-described conduct occurred and as a result of such conduct, Ms. Ramos believed her work environment to be hostile or abusive.

58.     Chook knew or should have known of the abusive conduct and failed to take prompt, remedial action to stop its conduct.

59.     As such, Chook violated 42 U.S.C. § 1981 and discriminated against Ms. Ramos by denying her full and equal benefit of all laws, subjecting her to sufficiently severe or pervasive

harassment based on her race and/or national origin so as to alter the conditions and terms of her employment, and by failing to act and condoning or tolerating such harassment, subjecting Ms. Ramos to less favorable terms and conditions of employment and ultimately constructively terminating her.

60.     The reasons Chook submits for changing the terms and conditions of Ms. Ramos's employment and constructively terminating her, if any, are false and pretext for unlawful discrimination.

61.     In unlawfully discriminating and retaliating against Ms. Ramos, Chook acted intentionally or in face of a perceived risk that their decisions would violate federal law, thereby necessitating the imposition of punitive damages.

62.     As a result of Chook's above-described conduct, Ms. Ramos has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, and she is entitled to general and special damages, and economic damages including front and back pay.  Ms. Ramos is also entitled to and seeks her attorneys' fees and costs (including expert witness costs) pursuant to 42 U.S.C. § 1988(b) and (c).

### SECOND CLAIM FOR RELIEF
**(Retaliation Based on Race and/or National Origin in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"))**

63.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

64.     Ms. Ramos engaged in activity protected by Section 1981 when she reported Chook's unlawful and discriminatory practices.

65.     Chook subjected Ms. Ramos to less favorable terms, conditions, and privileges of employment – and ultimately forced Ms. Ramos to resign – because she reported race and/or national origin-based harassment to Chook.

66.     Ms. Ramos's opposition and complaints regarding Chook's illegal practices were protected activities within the meaning of Section 1981.

67.     Chook unlawfully retaliated against Ms. Ramos in the terms and conditions of her employment and subjected her to further harassment because she engaged in the above-described statutorily-protected activities.  For example, Chook, among other things, subjected Ms. Ramos to altered terms and conditions of employment when Chook reduced Ms. Ramos's hours, cut her shifts early, denied Ms. Ramos a promotion, and forced Ms. Ramos to resign.  Chook failed and refused to take corrective action that would have prevented Ms. Ramos from being subjected to further harassment, and instead constructively terminated her employment.

68.     A causal connection exists between Ms. Ramos's protected activities and Chook's unlawful retaliation.

69.     In unlawfully discriminating and retaliating against Ms. Ramos, Chook acted intentionally or in face of a perceived risk that their decisions would violate federal law, thereby necessitating the imposition of punitive damages.

70.     As a result of Chook's retaliatory conduct, Ms. Ramos has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, and she is entitled to general and special damages, and economic damages including front and back pay.  Ms. Ramos is also entitled to and seeks her attorneys' fees and costs (including expert witness costs) pursuant to 42 U.S.C. § 1988(b) and (c).

### THIRD CLAIM FOR RELIEF
**(Discrimination and Hostile Work Environment Based on Race, Color, and National Origin in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*)**

71.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

72.     At all times relevant to this Complaint, Ms. Ramos was an "employee" as defined by 42 U.S.C. § 2000e(f).

73.     At all times relevant to this Complaint, Chook was an "employer" as defined by 42 U.S.C. § 2000e(b).

74.     Title VII makes it "an unlawful employment practice for an employer […] to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a)(1).

75.     Ms. Ramos is a member of a protected class because she is Hispanic and identifies as Hispanic and/or Latina.

76.     Based on the above-described acts, practices, and omissions, Chook engaged in unlawful discrimination under Title VII based on Ms. Ramos's race and/or national origin (Hispanic, Mexican, Latina).

77.     Chook's conduct was sufficiently severe or pervasive that a reasonable person in Ms. Ramos's position would find Ms. Ramos's work environment to be hostile or abusive.

78.     At the time the above-described conduct occurred and as a result of such conduct, Ms. Ramos believed her work environment to be hostile or abusive.

79. Chook knew of the abusive conduct and hostile work environment perpetrated by Ms. Ramos's supervisor but failed to take any prompt or appropriate remedial action to stop such conduct.

80. Thus, Chook is directly liable for the hostile work environment created and maintained by their supervisory level employee, Brandon Maynard.

81. As such, Chook violated 42 U.S.C. § 2000e-2(a) and discriminated against Ms. Ramos by not only subjecting her to sufficiently severe or pervasive harassment based on her race and/or national origin so as to alter the conditions and terms of Ms. Ramos's employment but also by failing to act and condoning or tolerating such harassment, subjecting Ms. Ramos to less favorable terms and conditions of employment by imposing heightened and/or disproportionate expectations, reducing Ms. Ramos's hours, cutting Ms. Ramos's shifts early, refusing to promote Ms. Ramos, and ultimately constructively terminating Ms. Ramos's employment.

82. The reasons that Chook submits for changing the terms and conditions of Ms. Ramos's employment and constructively terminating her, if any, are false and pretext for unlawful discrimination.

83. In unlawfully discriminating and retaliating against Ms. Ramos, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Ramos's equal rights under law, thereby necessitating the imposition of exemplary damages.

84. As a direct and proximate result of Chook's actions, Ms. Ramos suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience. She is therefore entitled to general and special damages, economic damages including front and back pay, and reasonable attorneys' fees and costs as permitted by law.

## FOURTH CLAIM FOR RELIEF

**(Retaliation Based on Race, Color, and National Origin in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,** *et seq.***)**

85.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

86.     Ms. Ramos engaged in activity protected by Title VII when she reported in good faith the unlawful harassment and discrimination based on her race and/or national origin to Chook's management and human resources.

87.     Chook unlawfully retaliated against Ms. Ramos in the terms and conditions of her employment by subjecting her to further harassment because she engaged in the above-described statutory protected activities and by reducing her shifts, cutting her shifts early, denying her a promotion, and constructively terminating her employment.

88.     A causal connection exists between Ms. Ramos's protected activities and Chook's unlawful retaliation.

89.     Chook's above-mentioned retaliatory conduct is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such that opposing discrimination by making internal reports of same to human resources for Chook.

90.     In unlawfully discriminating and retaliating against Ms. Ramos, Chook acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Ramos's equal rights under law, thereby necessitating the imposition of exemplary damages.

91.     As a direct and proximate result of Chook's acts and/or omissions, Ms. Ramos has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby

entitling her to general and specific damages, economic damages including front and back pay, and attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF
**(Discrimination and Hostile Work Environment Based on Sex/Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**

92.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

93.     At all times relevant to this Complaint, Ms. Ramos was an "employee" as defined in 42 U.S.C. § 2000e(f).

94.     At all times relevant to this Complaint, Chook was an "employer" as defined in 42 U.S.C. § 2000e(b).

95.     Title VII makes it "an unlawful employment practice for an employer […] to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a)(1).

96.     The phrase "terms, conditions, or privileges of employment," embedded within the text of Title VII, has been interpreted to prohibit employers from subjecting their employees to a discriminatorily hostile or abusive work environment.  *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

97.     For a hostile work environment claim to exist, the workplace must be permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Id.*

98.     Here, Chook, by and through Mr. Maynard, engaged in frequent and severe harassment of Ms. Ramos because of her sex/gender, as the conduct at issue involved explicit and/or implicit proposals of sexual activity.  *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

99.     At no time did Mr. Maynard ever sexually harass any of Chook's male employees.

100.     Chook's harassment of Ms. Ramos occurred countless times during her employment with Chook.

101.     Chook's conduct was sufficiently severe and/or pervasive that a reasonable person in Ms. Ramos's position would have found her work environment to be hostile and/or abusive. Moreover, Ms. Ramos subjectively perceived her work environment to be abusive and hostile, as she believed the conditions she was forced to endure were intolerable and humiliating.

102.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Ms. Ramos's federally protected rights.

103.     As a direct and proximate result of Chook's acts and/or omissions, Ms. Ramos has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling her to general and special damages, economic damages, and attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
**(Retaliation Based on Sex/Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**

104.     Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

105.    At all times relevant to this Complaint, Ms. Ramos was an "employee" as defined in 42 U.S.C. § 2000e(f).

106.    At all times relevant to this Complaint, Chook was an "employer" as defined in 42 U.S.C. § 2000e(b).

107.    Title VII makes its unlawful for an employer to "discriminate against any of his employees […] because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 200e-3(a).

108.    Chook took actions that a reasonable employee would have found materially adverse when it significantly reduced Mr. Ramos's hours, cut her shifts early, denied her a promotion, and constructively terminated Ms. Ramos shortly after she refused Mr. Maynard's advances and reported his unlawful behavior.

109.    The reasons Chook submits for changing the terms and conditions of Ms. Ramos's employment and constructively terminating her, if any, are false and pretext for unlawful discrimination.

110.    Chook's violations of Title VII's prohibition on retaliation were willful and without justification.

111.    Chook engaged in this conduct and/or violations of Title VII with malice and conscious disregard for Ms. Ramos's federally protected rights.

112.    As a direct and/or proximate cause of Chook's unlawful conduct, Ms. Ramos has suffered substantial economic and non-economic damages.

113.    Ms. Ramos is entitled to damages equal to her lost wages, salary, employment benefits and other compensation denied or lost, costs, attorneys' fees, interest, and equitable relief as deemed appropriate.

## SEVENTH CLAIM FOR RELIEF
### (Negligent Hiring, Supervision, and/or Retention)

114.    Ms. Ramos incorporates by reference the above paragraphs as though set forth separately herein.

115.    Chook had a duty to vet and supervise Mr. Maynard.

116.    Chook had a duty to use reasonable care when hiring Mr. Maynard to ensure that Chook did not hire an individual who might pose a threat of injury to his fellow employees.

117.    Chook had a duty to use reasonable care to supervise Mr. Maynard.

118.    Chook was negligent in hiring and/or supervising Mr. Maynard.

119.    Chook was aware of Mr. Maynard engaging in inappropriate behavior with Ms. Ramos.

120.    Chook's lack of supervision allowed Mr. Maynard to use and abuse the power he had over Ms. Ramos, including by subjecting her to unwelcomed sexual harassment.

121.    Chook was on notice or reasonably should have been on notice that Mr. Maynard's conduct created a risk of harm to their employees, including Ms. Ramos.

122.    Chook's negligence in addressing Mr. Maynard's behavior, and retaining him, condoned his actions and gave him free reign to sexually harass Ms. Ramos.  With proper supervision and investigation, Chook would have known they should not have retained Mr. Maynard.

18

123.    Ms. Ramos has been damaged in amounts to be proven at trial as a result of Chook's negligence in hiring, supervising, and/or retaining Mr. Maynard.

**EIGHTH CLAIM FOR RELIEF**
**(Violation of the Colorado Wage Act, C.R.S. § 8-4-103 *et seq.* ("CWA"))**

124.    Plaintiff incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

125.    The CWA requires employers to timely pay all wages and compensation due to an employee.  C.R.S. § 8-4-103.

126.    Wages and compensation owed to an employee include any tips/gratuities to which she is entitled under any agreement or valid tip pool arrangement.  *See* C.R.S. § 8-4-103(6); C.R.S. § 8-4-101(14)(a)(I)-(II).

127.    Effective August 2, 2019, the CWA was amended to remove previously-included language allowing an employer to take any part of gratuities. *See* DLSS Statement of Basis, Purpose, Specific Statutory Authority, and Findings, Colorado Overtime and Minimum Pay Standards Order (COMPS Order) #36,  at 49 (stating that 2019 version of C.R.S. § 8-4-101(3) "simply disallow[s] employers from attempting to claim control, or assert ownership in employee tips").

128.    Section 8-4-103(6) of the CWA currently states:

> It is unlawful for an employer engaged in a business where the custom prevails of the giving of gratuities by patrons to an employee of the business to assert a claim to, or right of ownership in, or control over gratuities. These gratuities are the sole property of the employee unless the employer notifies each patron in writing, including by a notice on a menu, table tent, or receipt, that gratuities are shared by employees. Nothing in this section prevents an employer from requiring employees to share or allocate gratuities on a preestablished basis among the employees of the business.

19

C.R.S. § 8-4-103(6).

129.     The Act further provides:

> When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately.
>
> . . .
>
> When a separation of employment occurs, the employer shall make the separated employee's check for wages due available at one of the following locations selected by the employer: (I) The work site; (II) The employer's local office; or (III) The employee's last-known mailing address.

C.R.S. § 8-4-109(a), (b).

130.     Chook was Ms. Ramos's "employer" as defined by the Wage Act.  Under the Wage Act, "employer" has the same meaning as set forth in the federal Fair Labor Standards Act.  C.R.S. § 8-4-101(6) (citing 29 U.S.C. § 203(d)).

131.     Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to "tender" such wages/compensation within 14 days of receiving a "written demand" or complaint are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;" or (B) quadruple damages, if the employee is able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b); *see Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶¶ 12-14 ("penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days").

132.    A violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); C.R.S. § 8-4-109(3)(b)(II).

133.    Ms. Ramos was unlawfully denied earned tips by Ms. Maynard.

134.    Chook's conduct was "willful," as demonstrated by Mr. Maynard's statement: "So i [sp] cut Fay at 8 because I didn't think it fair to give her another free hour of pay and shared tips with a staff that was diligently working."  [Chook's Position Statement, Exhibit E].

135.    Chook has unlawfully withheld from Ms. Ramos tips that she was entitled to.

136.    Accordingly, Chook is liable to Ms. Ramos for wages and compensation, statutory penalties under C.R.S. § 8-4-109(3)(b), additional statutory penalties under C.R.S. § 8-4-109(3)(c) based on the willfulness of its violations, and Ms. Ramos's reasonable attorney's fees and costs. *See* C.R.S. § 8-4-110.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Chook and order the following relief as allowed by law:

A.    Compensatory damages, including but not limited to, those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.    Punitive damages as allowed by law;

C.    Attorneys' fees and costs of this action;

D.    Pre-judgment and post-judgment interest at the highest lawful rate; and

E.    Such further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 28th day of July 2023.

HKM EMPLOYMENT ATTORNEYS LLP

By: */s/ Jesse K. Fishman*
    Claire Hunter
    Jesse K. Fishman
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    chunter@hkm.com
    jfishman@hkm.com
    *Attorneys for Plaintiff Fay Ramos*